UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brian Sletten,                                              Civil No. 06-3521 (DWF/RLE)

          Plaintiff,

v.                                                          **MEMORANDUM**
                                                                     **OPINION AND ORDER**
United Parcel Service, Inc.,

          Defendant.
_____

Amy J. Doll, Esq., Fluegel Helseth McLaughlin Anderson & Brutlag, counsel for Plaintiff.

Erin A. Oglesbay, Esq., and Deborah A. Ellingboe, Esq., Faegre & Benson LLP, counsel for Defendant.
_____

## INTRODUCTION

This matter came before the Court on August 23, 2007, pursuant to cross-motions for summary judgment brought by Plaintiff Brian Sletten and Defendant United Parcel Service, Inc. ("UPS"). For the reasons set forth below, the Court grants Sletten's motion and denies UPS's motion.

## BACKGROUND

Sletten is an employee of UPS and a member of a local union affiliated with the International Brotherhood of Teamsters (the "Union"). The terms of Sletten's employment are established by the National Master United Parcel Service Agreement and Central Region Supplemental Agreement (the "Collective Bargaining Agreement" or "CBA") between the Union and UPS. The CBA addresses, among other things, UPS's

obligations with respect to its employees' health insurance.  In particular, the CBA requires UPS to "make health and welfare and pension contributions for employees . . . who have been injured off the job for a period of four (4) weeks." (Affidavit of Erin Oglesbay in Supp. of Def.'s Mot. for Summ. J., dated September 12, 2007, ("Oglesbay Aff. I"), Ex. A at 187.)  The CBA also provides that during a period of Family Medical Leave Act ("FMLA") leave, "[UPS] will maintain health insurance coverage."[1] (*Id*., Ex. A at 42.)

UPS's health benefit premium contributions are made to the Union's Health, Welfare, Eye and Dental Fund (the "Fund").  The Fund provides employee health insurance.  The terms of the Fund's coverage are contained in the Fund's Summary Plan Disposition ("SPD").  The SPD explains the Fund's subrogation right, which allows the Fund to recover "benefits it pays which are, in any way, the responsibility of or otherwise compensated by a Third Party or insurer." (*Id*., Ex. B at 92.)

On November 6, 2004, Sletten was injured in a non-work-related incident involving a third-party.  In a letter to Sletten dated November 10, 2004, UPS explained that, beginning on November 8, 2004, Sletten's absence would be covered under the FMLA.  In the same letter, UPS informed Sletten that it would "maintain [his] current level of health care benefits for the duration of [his] leave." (Doll Aff., Ex. C.)  Sletten

---

[1] UPS's Family and Medical Leave Compliance Manual provides that "UPS will maintain [an eligible employee's] current level of health care benefits for the duration of [that employee's] leave." (Affidavit of Attorney Amy J. Doll ("Doll Aff."), Ex. B.)

was on leave from work for approximately eight months, during which he was provided health insurance coverage. UPS paid Sletten's health insurance premium for four weeks. On or about December 4, 2004, UPS stopped paying Sletten's health insurance premium, and the Union began paying the premium through the Fund.

Sletten ultimately received a settlement from the third-party involved in the November 2004 incident. In November 2005, the Fund asserted a subrogation interest against Sletten's settlement, seeking recovery for payments made on Sletten's behalf, as well as all "health and welfare premiums." (Oglesbay Aff. I, Ex. D.) Specifically, the Fund sought recovery of $23,781.28. This amount included $3,351.18 for paid medical expenses; $12,850.00 in paid disability benefits; and $7,580.10 for thirty-three weeks of health insurance premiums at a rate of $229.70 per week. On December 1, 2005, Sletten paid the Fund the amount requested in full. In August 2006, Sletten commenced this action, alleging that UPS violated the FMLA by failing to pay his health care premiums for the statutorily mandated period.

## DISCUSSION

**I.    Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has

stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II.    FMLA Liability**

Sletten argues that UPS violated the FMLA because it was obligated to continue to pay his health insurance premiums during the entirety of his eligible FMLA leave, as it had while he was working. UPS, on the other hand, argues that it complied with the FMLA because Sletten's medical coverage continued, regardless of who paid the premiums.

The FMLA allows eligible employees "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.

§ 2612(a)(1)(D).[2]  The FMLA also provides that:

> during any period that an eligible employee takes leave . . . the employer shall maintain coverage under any "group health plan" . . . for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave.

29 U.S.C. § 2614(c)(1); *see also* 29 C.F.R. § 825.100(b) ("An employee on FMLA leave is also entitled to have health benefits maintained while on leave as if the employee had continued to work instead of taking the leave.").  The key question here is whether UPS maintained Sletten's coverage "at the level and under the conditions coverage would have been provided" if Sletten had continued working instead of taking leave.  *See* 29 U.S.C. § 2614(c)(1).[3]

UPS contends that it complied with the FMLA, despite the fact that it did not continue to pay premiums, because Sletten's coverage continued for the duration of his leave.  In support of this argument, UPS relies primarily on *Deily v. Waste Management of Allentown*, 118 F. Supp. 2d 539 (E.D. Pa. 2000).  This case, however, is inapposite.  In

---

[2]  UPS's Family and Medical Leave Compliance Manual provides that "[a]n eligible employee may take up to 12 . . . weeks of unpaid leave during each calendar year." (Doll Aff., Ex. B.)  Sletten argues that he was entitled to FMLA leave for eight weeks in 2004 and twelve weeks in 2005.  UPS does not contest that Sletten was entitled to a total of twenty weeks of FMLA leave.

[3]  In a February 21, 2006 letter, counsel for Sletten suggested that UPS "wrongly coded" Sletten's leave as "disability" instead of "FMLA leave." (Oglesbay Aff. I, Ex. G.)  UPS acknowledges that it classified Sletten as being on "disability" leave, but argues that an employee's FMLA leave may run concurrently with disability leave.  Regardless of how Sletten's leave was coded, UPS was obligated to comply with the provisions of the
(Footnote Continued on Next Page)

*Deily*, the court dismissed the plaintiff's FMLA claim for failure to state a claim after the plaintiff challenged his employer's use of his accrued vacation monies to pay health premiums while on FMLA leave.  118 F. Supp. 2d at 544.  There, the court held that the employer did not violate the FMLA provision requiring employers to maintain coverage for employees, explaining that "[s]ection 2614(c) merely requires that an employer maintain group health coverage through a FMLA leave period, and plaintiff does not allege that defendant failed to maintain his coverage during his leave."  *Id*. at 544.  But the court in *Deily* did not discuss the section's requirement that coverage be maintained "under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave."  *See* 29 U.S.C. § 2614(c)(1).  In addition, it is unclear whether the employer in *Deily* paid any portion of the employee's health care premiums during employment.  Thus, there is no way of knowing whether the employer in *Deily* maintained coverage "under the conditions" that would have been provided if the employee was employed.

The FMLA plainly requires an employer to do more than simply ensure that an employee has continued coverage.  Instead, an employer must "maintain coverage . . . for the duration of [FMLA] leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave."  29 U.S.C. § 2614(c)(1); *see also* 29 C.F.R. § 825.100(b).  Here,

---

(Footnote Continued From Previous Page)
FMLA.  As explained below, UPS failed to do so.

there is no dispute that had Sletten continued working for the duration of his leave, UPS would have continued to pay his health insurance premium. There is also no dispute that UPS did not continue to pay the premiums during Sletten's FMLA leave. The Court therefore concludes that UPS failed to "maintain coverage . . . at the level and under the conditions coverage would have been provided" if Sletten had continued in employment.

UPS also asserts that it is a party to a multi-employer plan,[4] and as such it was not obligated under applicable law to make contributions on behalf of Sletten during his leave. With respect to the obligation of an employer under a multi-employer plan to continue to make health care premium contributions, the Code of Federal Regulations provides the following:

> An employer under a multi-employer plan must continue to make contributions on behalf of an employee using FMLA leave as though the employee had been continuously employed, *unless the plan contains an explicit FMLA provision for maintaining coverage* such as through pooled contributions by all employers party to the plan.

29 C.F.R. § 825.211(b) (emphasis added).[5]

UPS also relies on a United States Department of Labor advisory opinion ("DOL Opinion Letter"), dated January 20, 2006, that discusses the requirement for employer contributions to a multi-employer health plan. In the case discussed in the DOL Opinion

---

[4] At the hearing, counsel for Sletten appeared to contest this assertion. For the purposes of considering Sletten's motion, the Court assumes, without deciding, that this case involves a multi-employer plan.

Letter, the employer's plan did not contain a provision that explicitly addressed the FMLA or participants on FMLA leave. But the plan did provide benefits for disabled participants through its Disability Extension of Coverage rules, which did not require current employer contributions during the period of disability. The DOL Opinion Letter states that "[i]n this particular situation, . . . 29 C.F.R. § 825.211(b) would not require the employer to make contributions on behalf of the employee using FMLA leave. This is because the multi-employer plan expressly provides a method of maintaining health insurance coverage during the FMLA leave through payments from the plan's reserves." (Affidavit of Erin Oglesbay in Opp'n to Pl.'s Mot. for Summ. J., dated August 3, 2007, ("Oglesbay Aff. II"), Ex. I.) UPS argues that the DOL Opinion Letter supports its position that it was not required to make contributions to cover Sletten's health insurance premiums during Sletten's leave.

The Supreme Court of the United States has held that courts must defer to an agency's regulation containing a reasonable interpretation of an ambiguous statute. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984). However, where an agency offers an interpretation that is not the result of formal procedures, such as in opinion letters, that interpretation lacks the force of law and does not warrant the *Chevron*-style deference. *Christensen v. Harris County*, 529 U.S. 576,

---

(Footnote Continued From Previous Page)
[5]      There are circumstances where an employer may recover its share of health plan premiums during a period of unpaid FMLA leave. *See, e.g.*, 29 U.S.C. § 2614(c)(2) and
(Footnote Continued on Next Page)

586-87 (2000). Instead, interpretations contained in opinion letters are "entitled to respect" but only to the extent that the interpretations have the "power to persuade." *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Moreover, an agency's interpretation of its own regulation is entitled to deference, but only when the language of the regulation is ambiguous. *Id.* at 588.

The Court concludes that the regulatory language of 29 C.F.R. § 825.211(b) is not ambiguous—it plainly requires a party to a multi-employer plan to "continue to make contributions on behalf of an employee using FMLA leave as though the employee has been continuously employed, *unless the plan contains an explicit FMLA provision for maintaining coverage* such as through pooled contributions by all employers party to the plan." 29 C.F.R. § 825.211(b) (emphasis added). The Court declines to rely on the DOL Opinion Letter to read-out this unambiguous requirement. *See, e.g.*, *Christensen*, 529 U.S. at 588 ("To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation."). Here, the CBA provides for how an employee's health coverage will be funded while the employee is on disability leave, but it does not contain an explicit FMLA provision for maintaining coverage. Accordingly, the Court concludes that even if 29 C.F.R. § 825.211(b) applies in this case, UPS was obligated to continue to make health insurance contributions for Sletten during his FMLA leave. Again, there is no factual dispute that UPS failed to do

---

(Footnote Continued From Previous Page)
29 C.F.R. § 825.212. No such circumstances exist here.

so.

For the reasons discussed above, the Court concludes that Sletten is entitled to summary judgment on his FMLA claim.

## III.     FMLA Damages

Having concluded that UPS violated the FMLA, the Court must now determine appropriate damages. The FMLA provides that:

> Any employer who violates section 2615 of this title shall be liable to any eligible employee affected—(A) for damages equal to—(i) the amount of—(I) any . . . employment benefits . . . denied or lost to such employee by reason of the violation; . . . [and] (ii) the interest on the amount described in clause (i) calculated at the prevailing rate.

29 U.S.C. § 2617(a)(1)(A)(i) and (ii). Sletten has established that UPS was obligated to pay health care premiums in the amount of $229.70 per week for eight weeks in 2004 and for twelve weeks in 2005. UPS paid only four weeks of premiums in 2004. Thus, UPS failed to pay for sixteen weeks of premiums, for a total of $3,675.20. Sletten reimbursed the Union for these premiums and therefore was prejudiced by UPS's failure to pay.[6] The

---

[6] It appears that the Union understood that UPS—not Sletten—was obligated to pay Sletten's premiums for the duration of his FMLA leave. In particular, the SPD explains that "United Parcel Service will remit the weekly employer contribution on [the employee's] behalf during such [off-the-job] disability for up to four (4) weeks (if [the employee is] FMLA covered, contributions will be remitted for twelve (12) weeks)." (Oglesbay Aff. I, Ex. B at 5-6.) The SPD also states: "If you are eligible for an FMLA leave, your employer will continue to make their contributions for your Plan coverage while you are out on an FMLA related leave." (*Id*., Ex. B. at 15.) The Court is troubled that the Union, which purportedly represents the interests of its members, would seek subrogation from Sletten for premiums it paid during Sletten's FMLA leave with the knowledge that Sletten was not responsible for these payments.

Court concludes that Sletten is entitled to a judgment against UPS in the amount of $3,675.20 for its failure to pay Sletten's health care premiums. In addition, Sletten is entitled to statutory interest on $3,675.20 calculated at the prevailing rate. Sletten represents that the prevailing rate is 5%. UPS has not contested that rate. Accordingly, the Court awards interest in the amount of $378.55, which represents 5% on $3,675.20 through August 23, 2007.

Sletten also argues that he is entitled to liquidated damages in the amount of $4,053.75. The FMLA provides that an employer who violates the FMLA "shall be liable to any eligible employee affected . . . [for] an additional amount as liquidated damages equal to the sum of the amount" of actual damages and interest awarded. 29 U.S.C. § 2617(a)(1)(A)(iii). The Court, in its discretion, may reduce liquidated damages upon a showing by the employer that the violation was in good faith and objectively reasonable. *Id.*; *see also Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 868 (8th Cir. 2006); *Thorson v. Gemini, Inc.*, 205 F.3d 370, 383 (8th Cir. 2000). To avoid liquidated damages here, UPS must establish that it intended to ascertain the dictates of, and act in conformance with, the FMLA. *Hite*, 446 F.3d at 868. Even if an employer acts in good faith, the decision to award liquidated damages remains within the discretion of the court. *Id.* There is a strong presumption is favor of doubling. *Id.* In its argument that liquidated damages are inappropriate, UPS focuses mainly on its compliance with the terms of its contract with the Union and the fact that it has an FMLA policy. The Court notes, however, that UPS has a separate obligation to comply with the FMLA. The Court concludes that UPS has

failed to make an evidentiary showing that it attempted to ascertain the requirements of, and act in conformance with, the FMLA. Accordingly, liquidated damages are appropriate.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff Sletten's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**.

2. Defendant UPS's Motion for Summary Judgment (Doc. No. 11) is **DENIED**.

3. UPS shall pay Sletten $8,107.50. This amount includes $3,675.20 for lost benefits plus interest in the amount of $378.55 and liquidated damages in the amount of $4,053.75.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 21, 2007            s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      Judge of United States District Court